UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ALEXANDER J. WEINBERG, individually and :
on behalf of all others similarly situated, :
:
                            Plaintiff, :     **MEMORANDUM & ORDER**
:     19-CV-05661 (DLI) (RER)
                  -against- :
:
RGS FINANCIAL, INC., :
:
                          Defendant. :
------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Alexander J. Weinberg ("Plaintiff") brings this putative class action against RGS Financial, Inc. ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. *See*, Complaint ("Compl."), Dkt. Entry No. 1. Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See*, Def.'s Mot., Dkt. Entry No. 20-1. Plaintiff opposed the motion. *See*, Plf.'s Opp'n, Dkt. Entry No. 21. Defendant replied. *See*, Def.'s Rep., Dkt. Entry No. 22. For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiff, an individual residing in Nassau County, New York, is a "consumer" and Defendant, a Texas corporation, is a "debt collector" under the FDCPA. Compl. ¶¶ 5-13. Defendant alleges that Plaintiff owes a debt and the debt was assigned to Defendant for collection. *Id*. ¶¶ 21, 25. On October 8, 2018, Defendant sent Plaintiff a collection letter. Compl., Ex. 1, Dkt. Entry No. 1-1 (the "Letter"). The Letter was Defendant's initial written communication with Plaintiff regarding the alleged debt. Compl. ¶ 30.

On the front page of the Letter, Defendant's name, logo and street address appear on the top left hand corner. Letter at 1. Defendant lists two telephone numbers, one where it can be contacted by phone and the other by text message. *Id.* Defendant also includes the address for Defendant's website where Plaintiff can "[m]anage [his] account or chat online" and the address for Defendant's Facebook page where Plaintiff can send a "Facebook message" to Defendant. *Id.* In the upper right hand corner, there is an account summary that lists, *inter alia*, the creditor (First National Bank), two account numbers and the amount owed ($2,187.15). *Id.*

Below this information, there is a shaded header that reads "ACCOUNT INFORMATION" followed by a message to Plaintiff on the left hand side. *Id.* The message provides Plaintiff with various options and methods to resolve the alleged debt. These include visiting Defendant's website to "negotiate and pay," calling Defendant's phone number or visiting its website "to make alternate arrangements." *Id.* At the end of the message, Defendant encourages Plaintiff to "feel free" to reach out with "compliments, complaints, or suggestions" by email and lists Defendant's email address. *Id.* Defendant includes its phone number both in the body of the message and in Defendant's signature. To the immediate right of the message, there is a box wherein Defendant states that Plaintiff can pay by phone, MoneyGram or mail and manage his account online. *Id.* Defendant provides its phone number again in this box.

Underneath the message and box, Defendant identifies itself as a debt collector and writes in bold and capital letters: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." *Id.* Below this instruction, there is a mailing coupon with a message in bold capital letters on the right hand side to "PLEASE SEND ALL CORRESPONDENCE TO:" Defendant's P.O. Box address, which is listed. *Id.* The reverse side of the Letter contains a header,

in bold capital letters that states: "IMPORTANT NOTICE[,]" and further states, *inter alia*, the following:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification[.] If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*Id.* at 2. At the bottom of the reverse side of the Letter, Defendant reiterates the payment options and includes a form that Plaintiff can fill out and mail, if he wishes to pay the debt by credit card. *Id.*

Plaintiff alleges that Defendant's Letter violates §§ 1692g, 1692g(b), 1692e and 1692e(10) of the FDCPA. First, Plaintiff claims that the least sophisticated consumer would believe that all disputes about the alleged debt must be in writing based on Defendant's instruction to "send all correspondence" to Defendant's P.O. Box address. Compl. ¶ 47. Plaintiff states that this language overshadows and contradicts the debt validation notice on the reverse side of the Letter. *Id.* ¶ 43-46. Second, Plaintiff argues that the Letter's format overshadows and buries the debt validation notice and discourages the least sophisticated consumer from reading and exercising his rights. *Id.* ¶¶ 73-101. Therefore, the Letter is false, deceptive and misleading. *Id.* ¶¶ 58, 102-107. Defendant counters that the Letter neither requires all disputes to be made in writing nor buries the debt validation notice and meets the requirements of Section 1692(g). Def.'s Mot. at 6-13.

## **LEGAL STANDARD**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are

3

undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). In deciding a Rule 12(c) motion, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). "A matter is deemed integral to the complaint when the complaint relies heavily upon its terms and effect. Typically, an integral matter is a contract, agreement, or other document essential to the litigation." *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019) (internal quotation marks omitted).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). To withstand such a motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court assumes the truth of the facts alleged and draws all reasonable inferences in the nonmovant's favor. *See*, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Although the complaint need not contain "detailed factual allegations," simple "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## **DISCUSSION**

The FDCPA was enacted to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S. Rep. No. 95-382 at 1696 (1977). The statute's purpose is to "eliminate abusive

debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA is "primarily a consumer protection statute," and the court "must construe its terms in liberal fashion [to achieve] the underlying Congressional purpose." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (internal quotation marks and citations omitted).

Consistent with these Congressional objectives, the Court must view a debt collection letter from the perspective of the "least sophisticated consumer." *Altman v. J.C. Christensen & Assocs.*, 786 F.3d 191, 193 (2d Cir. 2015) (citation omitted). This objective standard "ensure[s] that the statute protects the gullible as well as the shrewd[,]" but "carefully preserve[s] the concept of reasonableness" and "protects debt collectors from unreasonable constructions of their communications." *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318-20 (2d Cir. 1993)). Thus, it does not extend to "bizarre or idiosyncratic interpretations of collection notices." *Id.*

While the least sophisticated consumer lacks the astuteness of a lawyer or even the sophistication of the average, common consumer, he is neither irrational nor a dolt. *See*, *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citation omitted). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon*, 988 F.2d at 1319. When evaluating a Rule 12(c) motion, the Court may determine how the least sophisticated consumer would interpret a collection letter, which is a question of law. *See*, *Vega v. Credit Bureau Enter.*, 2005 WL 711657, at \*9 (E.D.N.Y. Mar. 29, 2005).

5

To assert a violation of the FDCPA, a plaintiff must allege that: "(1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector'; and (3) the defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Financial*, 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015). Plaintiff has alleged that he is a "consumer" and Defendant is a "debt collector" within the meaning of the FDCPA. Compl. ¶¶ 5-13. Accordingly, the issue before the Court is whether Plaintiff has stated plausible claims that Defendant's Letter violated §§ 1692g, 1692g(b), 1692e and 1692e(10) of the FDCPA.

"Section 1692g(a) of the FDCPA requires that a debt collector who sends a letter requesting payment of a debt provide the alleged debtor with a 'validation notice' in its initial communication, or no later than five days thereafter." *Spira v. Ashwood Fin., Inc.*, 358 F. Supp.2d 150, 156 (E.D.N.Y. 2005). This section was enacted to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Ellis*, 591 F.3d at 134 (citation omitted). The validation notice must include:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1-5).  While Sections 1692g(a)(4-5) refer to a consumer's written communications, "[a] consumer is not always required to dispute a debt in writing."  *Thomas v. Midland Credit Mgmt.*, 2017 WL 5714722, at *5 (E.D.N.Y. Nov. 27, 2017).  Section 1692g(a)(3) does not impose a writing requirement and a consumer may dispute a debt orally.  *See*, *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286-87 (2d Cir. 2013).

"[E]ven if the debt collector's notice contains all the information required by statute, it will still violate Section 1692g if the letter [] contains language that overshadows or contradicts other language informing a consumer of h[is] rights."  *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 190 (2d Cir. 2002) (internal quotation marks and citation omitted).  "A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to h[is] rights."  *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) (citation omitted); *See also*, *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (validation information cannot be conveyed in a "confusing or contradictory fashion" so as to "cloud the required message with uncertainty").  Thus, a notice cannot communicate "directly or indirectly[] that consumers may only enforce their right to dispute [a] debt in writing."  *Balke v. Alliance One Receivables Mgmt., Inc.*, 2017 WL 2634653, at *7 (E.D.N.Y. June 19, 2017) (citing *Hooks*, 717 F.3d at 286).

Under Section 1692e, a debt collector also cannot use "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This section sets forth prohibited practices, including a catch-all provision that bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]"  *Id.* § 1692e(10).  A collection notice is deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate."  *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d

7

Cir. 1996). The deception must be material and frustrate a consumer's ability to choose his response intelligently. *See*, *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85-86 (2d Cir. 2018) (citations omitted). Courts in this Circuit have concluded that the standard for determining a violation of § 1692e(10) essentially is the same as that for 1692(g). *See*, *Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp.3d 340, 353 (S.D.N.Y. 2015) (collecting cases). Thus, a misleading debt validation notice violates both Sections 1692(g) and 1692e(10). *Id.*

**I.     First Claim – 15 U.S.C. §§ 1692(g), 1692(e)**

Plaintiff alleges that the least sophisticated consumer would believe that all disputes about the alleged debt must be in writing based on Defendant's instruction to "send all correspondence" to Defendant's P.O. Box address. Compl. ¶ 47. Plaintiff states that this language overshadows and contradicts the debt validation notice on the reverse side of the Letter. *Id.* ¶ 43-46. Defendant contends that the Letter does not impose a writing requirement for disputes. Def.'s Mot. at 6-9. The instruction merely alerts the consumer about Defendant's preferred mailing address and provides alternate methods of communication, including Defendant's phone number, which is listed multiple times. *Id.* at 8. The instruction also is located on the front page, whereas the debt validation notice is on the back. *Id.* Therefore, the least sophisticated consumer would not read the instruction in conjunction with the debt validation notice or be misled about his rights. *Id.*

The least sophisticated consumer would not interpret Defendant's instruction to "send all correspondence" to its P.O. Box address to impose a mandatory writing requirement for disputes. The instruction makes no reference to disputes and refers generally to correspondence. *Cf.*, *Vetrano v. CBE Grp., Inc.*, 2016 WL 4083384, at *9 (E.D.N.Y. Aug. 1, 2016) (letter's instruction to "[f]orward written disputes" to defendant's P.O. Box address, when read in conjunction with validation notice, could have misled consumer to believe that disputes must be made in writing);

8

*Lotito v. Recovery Assocs., Inc.*, 2014 WL 4659464, at *8 (E.D.N.Y. Sept. 17, 2014) (language in collection letter to "dispute this matter in writing" could "reasonably be interpreted by the least sophisticated consumer as representing, incorrectly, that a debt dispute must be made in writing").

Plaintiff relies on *Balke* to support his contention that Defendant's instruction is misleading. Plf.'s Opp'n at 18. In that case, the defendant's collection letter stated that "any correspondence [] should be mailed" to the defendant's street address. 2017 WL 2634653, at *7. The instruction was in the same section as the debt validation notice, thereby increasing the chances that the consumer would read the provisions together and be misled about how to dispute the debt. *See*, *Goodman v. Mercantile Adjustment Bureau, LLC*, 2019 WL 692934, at *5 (E.D.N.Y. Feb. 19, 2019) (citing *Balke*, 2017 WL 2634653, at *7). The court found that, although the instruction did not reference written disputes, it introduced "enough uncertainty regarding the permissible methods of disputing the debt to state a plausible claim for relief . . . ." *Id.* at 8.

Plaintiff's reliance on *Balke* is misplaced as Defendant's Letter here is distinguishable. Defendant's instruction to "send all correspondence" to its P.O. Box address is located on the front page of the Letter, whereas the debt validation notice is written separately on the reverse side. For this reason, the least sophisticated consumer would not read the two provisions together or be misled about his rights to dispute the debt. *See*, *Dymond v. Commonwealth Fin. Sys.*, 2020 U.S. Dist. LEXIS 185487, at *8-11 (E.D.N.Y. Sept. 28, 2020) (instruction to "send all correspondence" to defendant's address was not misleading where language appeared in section "substantially separate" from validation notice); *Goodman*, 2019 WL 692934, at *6 (instruction to "send payment or correspondence" to defendant's P.O. box address was not misleading when language was in "entirely different section" of the letter than the validation notice).

Defendant's correspondence instruction merely alerts the consumer that it prefers to receive written correspondence at its P.O. Box address rather than its street address. It neither mandates that all disputes be made in writing nor foreclose oral communications. Indeed, Defendant lists its phone number four times in the Letter, a fact that Plaintiff does not acknowledge or address. Defendant directs Plaintiff to call its phone number in two locations "to make alternate arrangements" or to "pay by phone." Letter at 1. In *Balke*, the defendant included an instruction that, if the plaintiff was experiencing financial difficulties, she could call the defendant for assistance in "negotiating a suitable arrangement." 2017 WL 2634653 at *8. The *Balke* court found that this language limited how the consumer could use the phone number and did not mislead plaintiff as to how to dispute the debt. *Id.*

While here, Defendant's instruction to call to make "alternate arrangements" or to "pay by phone" is somewhat analogous to the language in *Balke*, Defendant also provides its phone number in two other locations without any qualifiers. Defendant lists its phone number both in the top left hand corner of the Letter under its logo and address and in the signature of its message to Plaintiff. Letter at 1. Reading the Letter as a whole, Defendant's repeated references to its phone number clearly demonstrate that Plaintiff can contact Defendant by telephone. The least sophisticated consumer would not believe that s/he could only dispute the debt in writing as oral communication unquestionably is an available option. *See*, *Rosen v. LJ Ross Assocs., Inc.*, 2020 WL 1332145, at *6 (E.D.N.Y. Mar. 23, 2020) (least sophisticated consumer would not be misled by instruction to "mail all correspondence" to defendant's P.O. Box address where defendant listed its phone number twice).

Plaintiff argues that the circuit split regarding the interpretation of Section 1692g further supports its contention that the least sophisticated consumer would be confused by Defendant's

10

instruction. Plf.'s Opp'n at 18-20. Thirty years ago, the Third Circuit concluded that Section 1692g(a)(3) requires consumers to submit disputes in writing. *See*, *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991). In a case decided eight years ago, which is binding on this Court, the Second Circuit disagreed and held that Section 1692g(a)(3) permits consumers to dispute debts orally. *See*, *Hooks*, 717 F.3d at 286-87.

Plaintiff's argument fails for three reasons. First, the Third Circuit recently overruled *Graziano* and, thus, there no longer exists a circuit split between the Third and Second Circuits on this issue. *See*, *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 594 (3d Cir. 2020) ("[W]e conclude that debt collection notices sent under §1692g need not require that disputes be expressed in writing. In doing so, we overrule *Graziano*'s contrary holding."). Second, the least sophisticated consumer cannot be presumed to know about splits among circuit courts, as s/he does not possess the astuteness of a lawyer. *See*, *Ellis*, 591 F.3d at 135. Third, the Second Circuit agreed with the Ninth Circuit that the least sophisticated consumer would not be misled or confused by the statute's bifurcated scheme wherein some rights can be trigged orally but others require a written statement. *See*, *Hooks*, 717 F.3d at 286 (citing *Camacho v. Bridgeport Fin.*, 430 F.3d 1078, 1082 (9th Cir. 2005)). Therefore, Plaintiff's argument is rejected.

Plaintiff has not demonstrated that the least sophisticated consumer would interpret Defendant's instruction to "send all correspondence" to its P.O. Box address to mean that disputes can only be made in writing. Defendant's instruction does not overshadow or contradict the validation notice on the reverse side of the Letter. Accordingly, Plaintiff has failed to state a plausible claim that Defendant violated Section 1692g. For the same reasons, Plaintiff has failed to state a claim under Section 1692e as Defendant's instruction was not false, deceptive or misleading. *See*, *Nunez v. Mercantile Adjustment Bureau, LLC*, 2020 WL 2475619, at *7

(E.D.N.Y. May 13, 2020) (instruction to "send payment or correspondence" to defendant's P.O. Box address did not violate Section 1692g and it was, "therefore[,] not misleading or deceptive under § 1692e").

## II.    Second Claim – 15 U.S.C. §§ 1692g(b), 1692(e), and 1692(e)(10)

Plaintiff also alleges that the Letter's format overshadows and buries the debt validation notice and discourages the least sophisticated consumer from reading and exercising his rights. Compl. ¶¶ 73-101.  Plaintiff states that the Letter makes demands for payment prominently in enhanced, bold font on the front page.  Plf.'s Opp'n at 20.  However, it contains no transitional language directing the consumer to the debt validation notice, which appears on the reverse side in condensed font.  *Id.*; Compl. ¶¶ 80-82.  Plaintiff claims that this format renders the validation notice visually inconspicuous and, thus, the least sophisticated consumer would view the notice as nothing more than "boilerplate language."  Plf.'s Opp'n. at 20, 23.  Defendant contends that the Letter contains transitional language, conveys clearly the consumer's validation rights on the reverse side, and meets the statutory requirements of Section 1692g.  Def.'s Mot. at 10-13.

Courts in this Circuit repeatedly have rejected the notion that a validation notice may be overshadowed by the formatting of the disclosures alone, absent contradictory language.  *See*, *Nunez*, 2020 WL 2475619, at *7 (collecting cases).  As discussed above, Defendant's instruction to "send all correspondence" to its P.O. Box address does not overshadow or contradict the debt validation notice on reverse side of the Letter.  *See*, *supra* at 8-11.  Therefore, the cases that Plaintiff relies upon and cites, where courts found violations of 1692g, are inapposite to this case. *See*, Plf.'s Opp'n at 22 (citing, *inter alia*, *Thomas v. Nat'l Bus. Assistants, Inc.*, 1984 WL 585309 (D. Conn. Oct. 5, 1984) and *Ost v. Collection Bureau, Inc.*, 493 F. Supp. 701 (D.N.D. 1980)).

Moreover, Defendant's placement of the debt validation notice on the reverse side of the Letter is permissible under the FDCPA and does not discourage the least sophisticated consumer from reading and exercising his rights. *See*, *McStay*, 308 F.3d at 191 ("So long as nothing on the front of the letter overshadows or contradicts the validation notice, the FDCPA does not require the notice to be printed on the front."); *Omogbeme v. Risk Mgmt. Alternatives, Inc.*, 2003 WL 21909773, at *3 (E.D.N.Y. Aug. 4, 2003) ("[T]he FDCPA does not prescribe any particular form sequence, location or typ[e]size[]" for a debt validation notice.) (citation omitted).

Notably, the Second Circuit held in *McStay* that, "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back." 308 F.3d at 191. Contrary to Plaintiff's assertion, Defendant included transitional language in bold, capitalized letters on the front page of the Letter directing the consumer to the notice on the reverse side: "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." Letter at 1. On the reverse side, Defendant then wrote in bold, capitalized letters "IMPORTANT NOTICE" and the consumer's validation rights appear underneath. *Id.* The least sophisticated consumer reasonably would follow these prominent signals and read the notice. *See*, *McStay*, 308 F.3d at 191. Plaintiff's objections regarding the "enhanced" and "condensed" font size on the front and back of the Letter respectively are belied by his Complaint, wherein he states that the notice is in "the same font size, style, color and case as the rest of the text, in the body of the Letter." Compl. ¶ 74.

Lastly, the text of the validation notice satisfies the requirements of Section 1692g. It includes the statutory language of Section 1692g(a)(3-5) nearly verbatim and does not indicate that a writing is required to dispute the alleged debt. Letter at 2. The notice properly informs the

consumer that he can submit a writing for the debt collector to verify the debt or to seek information about the name and address of the original creditor, if different from the current creditor. *Id.* Although Plaintiff claims that the notice appears as "boilerplate language" to the least sophisticated consumer, this does not amount to a statutory violation. Plf.'s Opp'n at 20. Courts in this Circuit have found that notices that track the statutory language of Section 1692g comply with the FDCPA. *See*, *Thomas*, 2017 WL 5714722, at *6 (collecting cases).

For these reasons, Plaintiff has failed to demonstrate that the Letter's format overshadows and buries the debt validation notice and discourages the least sophisticated consumer from reading and exercising his rights. Accordingly, Plaintiff has failed to state plausible claims that Defendant violated Sections 1692g(b), 1692(e), and 1692(e)(10). *See*, *Watson v. Premier Credit of N. America., LLC*, 2020 WL 5764107, at *6-7 (E.D.N.Y. Sept. 27, 2020) (dismissing plaintiff's claims under Sections 1692g and 1692e where letter contained "no contradictory or misleading language" and "the structure and formatting [] were well within the boundaries of the law").

## CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is granted and this action is dismissed in its entirety with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
　　　 May 17, 2021

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　DORA L. IRIZARRY
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge